336 F.2d 150
 ZIM ISRAEL NAVIGATION CO., Ltd., as Owner of STEAMSHIP ISRAEL, Libelant-Appellant,
v.
UNITED STATES LINES COMPANY, Respondent-Claimant-Appellee, and STEAMSHIP AMERICAN PRESS.
UNITED STATES LINES COMPANY, as Owner of Steamship American Press, Libelant-Appellant,
v.
ZIM ISRAEL NAVIGATION COMPANY, Respondent-Claimant-Appellee, and Steamship Israel.
 No. 464.
 No. 465.
 Docket 28528.
 Docket 28529.
 United States Court of Appeals Second Circuit.
 Argued June 1, 1964.
 Decided August 19, 1964.
 
 Eugene F. Gilligan, of Hill, Betts, Yamaoka, Freehill & Longcope, New York City (David C. Wood, New York City, of counsel), for Zim Israel Nav. Co., Ltd.
 John F. Gerity, of Kirlin, Campbell & Keating, New York City (Richard H. Brown, Jr., and Arthur J. Blank, New York City, of counsel), for United States Lines Co.
 Before MOORE, KAUFMAN and MARSHALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 In these consolidated actions, the owners of the SS. Israel and the SS. American Press each contend that the other's vessel was solely responsible for a collision between the two ships which occurred in New York Harbor on a clear and calm October evening in 1959. In a comprehensive and painstaking opinion below, Judge Weinfeld concluded that both vessels were at fault. We believe that his findings of fact were not clearly erroneous and that his conclusions of law were correct. We affirm on his opinion, reported at 222 F.Supp. 947 (S.D.N.Y. 1963).
 
 
 2
 As Judge Weinfeld noted and as both parties concede, the Israel was the "privileged" vessel, and accordingly had the duty of maintaining her course and speed; the American Press was the "burdened" vessel, and was charged with the obligation of averting the Israel's path. On appeal, neither party seriously questions Judge Weinfeld's findings that both vessels failed to comply with their obligations. Each contends, however, that the other's derelictions were the true cause of the accident, that its own faults contributed to the collision in no respect, and that any deviations from the path of duty were necessitated by the wrongdoing of the other.
 
 
 3
 Identical contentions were rejected below, and on this record we would have no justification on appeal in reaching a contrary conclusion as to these essentially factual questions so fully litigated in the court below. "In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure." McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954); Alison v. United States, 251 F.2d 74, 76 (2d Cir. 1958). See also Morales v. City of Galveston, 370 U.S. 165, 168, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962).
 
 
 4
 The judgment is affirmed.
 
 MOORE, Circuit Judge (dissenting):
 
 5
 This was an utterly needles collision and should not have occurred. But occur it did and it remains only to assess fault. The trial court has made careful and well-considered findings on the basis of which in my opinion the conclusion must be drawn as a matter of law that the American Press was solely to blame for the collision. No repetition of the facts amply set forth in the trial court's lucid analysis is necessary. See 222 F.Supp. 947.
 
 
 6
 The Israel was the privileged vessel; the American Press the burdened vessel. Pilot Rule 80.7(a) provides that the burdened vessel "shall keep out of the way of the other by directing her course to starboard so as to cross the stern of the other steam vessel, or, if necessary to do so, slacken her speed or stop or reverse."
 
 
 7
 In my opinion, the conclusions of the trial court are inconsistent with the finding that both vessels were at fault. He found that "[t]he essential duty of the American Press as the burdened vessel was to keep out of the way of the Israel"; that the American Press failed to alter her course to starboard; that had she done so the collision would have been avoided despite the Israel's change of speed; that starboard action was not precluded by an alleged shoal area; and that the American Press failed in her statutory duty to keep out of the way of the Israel.
 
 
 8
 Despite these findings, the trial court found that the Israel committed a breach of statutory duty in that she failed to maintain her course and speed. However, "[t]he so-called privileged vessel has no absolute right to keep her course and speed regardless of the danger involved in that action." Postal S.S. Corp. v. El Isleo, 308 U.S. 378, 387, 60 S.Ct. 332, 336, 84 L.Ed. 335 (1940). It was the failure of the American Press to go astern of the Israel which was the cause of the collision. Even assuming a departure by the Israel from a statutory duty to maintain speed and course, the reduction in speed was not a producing cause of the American Press's failure to veer to starboard.
 
 
 9
 I cannot reconcile the decision of the Supreme Court in El Isleo and the law as stated, with the conclusion of the court below. To me the American Press upon the conceded facts and the applicable law was solely at fault. Hence, I would reverse.